No. 661

First Circuit

DUMESNIL v. STEINBERG

(June 30, 1930. Opinion and Decree.)
(October 7, 1930. Rehearing Refused.)

Cross & Moyse, of Baton Rouge, attorneys for plaintiff, appellee.

C. A. Battle, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. L. Lewis, claiming to represent H. Stein & Company of Baton Rouge, bought from plaintiff, a butcher of Lafayette, 89 hides, weighing 3,224 pounds, at 11½ cents a pound, making $370.76, for which he drew a check on Stein & Co. of Baton Rouge, which that company turned down and refused to pay. This refusal was based on the fact, as was testified to by Mr. Stein, and uncontradicted, that, three or four days before the hides were purchased, Lewis had been discharged from service by his company, and therefore had no authority whatsoever to draw for the purchase of these hides.

These hides were bought by Lewis from plaintiff on Tuesday, March 12, 1929.

The defendant alleges that it bought 1,790 pounds of hides on March 13th from Harry Cohen, but which were not part of the hides Lewis had purchased from plaintiff, Dumesnil, on March 12, 1929, and specifically denies that it ever purchased or received the difference of 1,434 pounds between what it had bought from Cohen, and the lot of hides Lewis had purchased originally from plaintiff.

The sole issue is therefore one of fact, and resolves itself into the question as to whether defendant purchased or received the 3,224 pounds of hides, which plaintiff claims, or, in the alternative, their value.

It is shown by the testimony of Eddins, manager of defendant company, and Cohen, that the latter was buying hides for defendant company, Cohen says, exclusively. It is shown that Cohen had loaned his truck to Lewis, and his negro driver, and that

he was then in or near Lafayette, where these hides were originally bought, as hereinabove stated. Cohen disclaims, however, of having had any knowledge as to where or from whom Lewis had gotten these hides. He testifies that he bought hides which Lewis claimed weighed about 1,800 pounds, and admits that they were carried in his truck to Baton Rouge, but as to where Lewis took them, he says, he has no knowledge. He testifies that he did not count the hides in the bundles when he bought the 1,790 pounds, and that Lewis allowed him to make his own price. To say the least, this was a loose and careless way of conducting a transaction on the side of both the seller and the buyer.

It is shown that after Stein & Co. had declined to pay the check that plaintiff and his attorney, Mr. Xavier Mouton, of Lafayette, went to Baton Rouge for the purpose of locating these hides. While in Baton Rouge they were directed by Mr. Stein to the establishment of defendant company, which was in the business of buying hides. They were permitted by Mr. Eddins, manager of the company, to interview a negro in reference to the purchase of these hides at Lafayette, and their transportation to Baton Rouge. The negro's name, which appears from the record to be Rosin, was immediately recognized by plaintiff as having been in the truck with Lewis when Lewis bought the hides from him.

Plaintiff and Mr. Mouton both testify that they had an interview and a conversation with Rosin in reference to these hides in the presence of Mr. Eddins, the manager, which took place in the office of the company in Baton Rouge. Plaintiff testifies that Rosin said the hides had been brought in the truck to Steinberg's at Baton Rouge, and that he had driven the truck, that Mr. Eddins had stated that he believed the hides belonged to plaintiff, and that

he would try to locate them in a big pile, where it was difficult to tell one from the other. Mr. Mouton testifies that Mr. Eddins was present when Rosin made the statement testified to by plaintiff, and stated that Rosin had said he was certain that all the hides bought from plaintiff by Lewis had been delivered to defendant company, because he had not left the truck from the time the truck left Lafayette, to the time of the delivery of the hides to defendant.

Mr. Eddins admits that he permitted the interview with the negro, but says it was Saturday, that he was very busy paying off, paid no attention to what was going on, and denies that any of the conversation testified to by plaintiff and Mr. Mouton took place in his presence.

Mr. Carleton, defendant's bookkeeper, was in the office at the time of the conversation. He was called as a witness for defendant, and was asked the following on the subject under discussion:

"Q. Who carried on the conversation with the negro?
"A. Well, the conversation was with Mr. Eddins, Mr. Mouton and Mr. Dumesnil. Just general conversation.
"Q. All three asked the negro questions?
"A. Yes.
"Q. Neither Mr. Eddins nor you left during that time?
"A. No sir."

It is true that Mr. Carleton says he did not hear the negro say anything about plaintiff's hides, but the fact remains that his testimony is directly at variance with the testimony of Mr. Eddins when he denies that any such conversation took place in his presence. Not only was it held in his presence, but, according to Mr. Carleton, Mr. Eddins took part in it, asking questions of the negro with plaintiff and Mr. Mouton.

No doubt, the district judge, from the character of the evidence to which we have referred, concluded that the version of the conversation with Rosin, and the declarations he had made as was testified to by plaintiff and Mr. Mouton, was what had really occurred at the interview in the office of defendant company.

The statements of Rosin, taken in connection with the fact that Cohen was in Lafayette or vicinity when Lewis bought these hides, that were carried in a truck which had been loaned to Lewis by Cohen, buyer of hides for defendant company, prove, as we read this record, with legal moral certainty, that defendant received the hides claimed by plaintiff by purchase or otherwise for which it was properly held liable by the lower court.

There is certainly no manifest error in the finding of fact below, which could be deduced from the evidence so as to authorize a reversal by this court.

## ON REHEARING

MOUTON, J. In passing on the application for a rehearing, we find it unnecessary to again reconsider the main issues of fact which were fully discussed in our original opinion.

Counsel for defendant, in his application, says that only 1,790 pounds of hides reached defendant.

Cohen says he did not weigh the hides when he bought them, did not count them, made his own price for the purchase, did not know how many bundles were taken out, and did not know how many hides were in the shipment.

In answer to a direct question put to him, Eddins, manager of the Steinberg Hide & Fur Company, admitted that he could have gotten, without knowing it, the 1,434 pounds of hides, being the difference between the 3,224 pounds plaintiff is claiming and the 1,790 pounds which defendant contends were bought.

With testimony of that character, taken in connection with the other facts and circumstances referred to in our first opinion, we find no reason whatsoever to depart from our original finding, in which we held that it had been shown, with legal certainty that defendant had received the 3,224 pounds of hides sued for.

Applicant contends also that Morris Steinberg was not present at the conversation or interview with Rosin at the office of defendant company, referred to in our original opinion, and for that reason the statements of the negro, Rosin, were inadmissible in evidence.

The record shows that the hides were bought for the Steinberg Hide & Fur Company by Cohen. It is also shown that the interview was held in the presence of Eddins, manager of that company, who participated in the conference or interview. It seems to us that the Steinberg Hide & Fur Company could not have had a better representative at that interview than Eddins, its manager. The fact is that counsel for defendant questioned and cross-questioned Mouton and plaintiff in reference to what occurred at that conference, and without reservation offered testimony on this subject through Eddins, the manager, and Carleton, bookkeeper, of the Steinberg Hide & Fur Company, to refute and discredit the evidence of plaintiff and Mouton, plaintiff's witness; and counsel now says that our consideration of that testimony was a perversion of the rules of evidence.

The evidence was admissible and legal. Even without that testimony, the evidence

is sufficient to fix the liability for the hides in question, and, taking the case from every conceivable angle, there is no ground presented in the application to lead us to a conclusion different from the one originally reached.